NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0003062
29-JAN-2015
02:42 PM**

NO. CAAP-13-0003062

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ROBERT TETU, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 10-1-0833)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Reifurth and Ginoza, JJ.)

Plaintiff-Appellant State of Hawaiʻi (State) charged Defendant-Appellant Robert Tetu (Tetu) with second-degree burglary, in violation of Hawaii Revised Statutes (HRS) § 708-811 (2014).[1]  After a jury trial, Tetu was found guilty as charged. The Circuit Court of the First Circuit (Circuit Court)[2] sentenced Tetu to five years of imprisonment.

Tetu appeals from the Judgment entered on August 14, 2013, in the Circuit Court.  On appeal, Tetu contends that: (1) the Circuit Court erred in denying his motion to compel

---

[1] HRS § 708-811 provides in relevant part: "A person commits the offense of burglary in the second degree if the person intentionally enters or remains unlawfully in a building with intent to commit therein a crime against a person or against property rights."

[2] The Honorable Colette Y. Garibaldi presided.

discovery; and (2) there was insufficient evidence to support his conviction. We affirm.

BACKGROUND.

I.

Tetu was charged with burglarizing the Maunaihi Terrace condominium building. Matthew Robinson (Robinson) was the resident manager for the Maunaihi Terrace. On March 25, 2010, Robinson was informed by a tenant that someone had broken into the tenant's car. The next day, Robinson could not find a hand grinding tool he had been using and discovered that batteries and lights were missing from a locked utility closet in the basement. These events prompted Robinson to review the condominium building's surveillance video recordings. The surveillance video showed that on March 25, 2010, at about 2:00 a.m., there was a man, later identified as Tetu, in the basement. The surveillance video revealed that Tetu tried to open two locked utility closet doors and eventually succeeded. Tetu went into the first closet and wiped the doorknob with his jacket. He went into the second closet and emerged with a bag, wiping the doorknob as he left. Tetu appeared to have a flashlight in his mouth. Upon inspecting the basement area, Robinson noticed "[a] deep gauge [sic] mark right at the doorknob wood area[]" that was not there before March 25, 2010.

Robinson testified that on March 25, 2010, neither Tetu nor his wife, Sachiko Tetu (Sachiko),[3] were residents of Maunaihi Terrace. Robinson further testified that the basement utility closets that Tetu was seen entering in the surveillance video were not used by residents to store their things. The closets, which were located next to the elevators, were locked and required keys to open. Only Robinson, the property manager, the cleaning staff, and the fire department possessed or had access to the keys.

---

[3] On March 25, 2010, Sachiko and Tetu were still married, but they were divorced by the time of trial.

II.

Tetu testified in his own defense at trial. Tetu admitted that he was the person seen in the surveillance video. According to Tetu, on March 24, 2010, he and Sachiko, who at that time was his wife, got into an argument. Tetu dropped Sachiko off in an area near the Maunaihi Terrace, and Sachiko had two plastic bags, two small suitcases, and a handbag with her. Later that night or early the next morning, Sachiko called him and asked that he help her, and Tetu went back to where he had dropped Sachiko off. Sachiko led Tetu down a ramp to a door on the side of the Maunaihi Terrace and asked him to retrieve her clothes from a closet by the elevator. Tetu did not know if Sachiko had "accidentally" locked her belongings in the closet. Tetu entered the building through the side door alone. Tetu did not know where Sachiko went after he entered the building. Once inside, Tetu broke into the closets using "a piece of twine" to unlock the doors, but he only took Sachiko's clothes, which he found in the second closet, and nothing else. Tetu testified that his intent when he went into the building and the closets was only to retrieve Sachiko's clothes, and not to take anything that did not belong to him.

III.

The State called Sachiko in rebuttal. Sachiko refuted almost every material aspect of Tetu's version of events. Sachiko testified that she was not familiar with Maunaihi Terrace; had never been there; and did not have any friends who lived in that building. Sachiko specifically denied being at the Maunaihi Terrace on March 25, 2010. Sachiko further testified that she never kept any of her belongings at Maunaihi Terrace; she never told Tetu to go into Maunaihi Terrace to get her clothes; and she never held the door open to Maunaihi Terrace "for [Tetu] to go inside[.]" Sachiko stated that after she got into an argument with Tetu on March 24, 2010, she went to a friend's house. She denied that Tetu had given her a ride to an area near Maunaihi Terrace. Sachiko testified that she married

3

Tetu in January 2010 and that they were divorced in September 2011.

IV.

Tetu's theory of defense was that he was guilty of criminal trespass but not burglary because he did not have the intent to commit a crime in the building. In closing argument, Tetu's counsel stated:

> The video shows him looking into the utility closets, where Sachiko had told him that she left her property. Indeed, he is seen leaving with what looks like a garbage bag at the end of the video. He knows he had no permission to be there, he doesn't live there, and he's not a guest, but he was stressed, uncomfortable with what he was doing, but he had no intent to commit a crime against person or property.

Counsel asserted that "the State has shown trespass, but not burglary."

DISCUSSION.

We resolve Tetu's arguments on appeal as follows.

I.

Tetu contends that the Circuit Court erred in denying his motion compel discovery, which sought a court order compelling the State or the owners of Maunaihi Terrace to make the premises of the alleged burglary available for inspection, measurement, and photographs. We disagree.

A.

In his written motion, Tetu justified his need for access to Maunaihi Terrace as follows:

> The State's diagrams, video and photograph discovery do not adequately orient defendant and counsel to the area in question for purposes of cogently presenting this case to a jury. The video is from a fixed camera, and the footage does not show the inside of the rooms; only a partial photo of the interior of the room #3[4] [disc. P. 99, exh. A]. Defendant is not a resident, and he was not known to frequent the area.
>
> Nor is the area surrounding room #3 depicted. Familiarity with the distances [diagrams are not drawn to scale] and scene will help counsel to intelligently question

_____

[4] The reference to "room #3" is to the utility closet which Tetu entered and then came out of carrying a bag.

4

> and cross-examine witnesses, present visual evidence to the jury and to understand the account of defendant, who is currently in custody. Additionally, counsel should be permitted to photograph areas which may be significant to the defense if they are not already depicted in the discovery already produced.

(Brackets, except those around footnote, in original.)

At the hearing on his motion, Tetu's counsel additionally argued:

> It seems that a conscientious defense lawyer will usually go to the scene of the alleged offense to get his bearings and to understand what allegedly happened versus what the defendant is saying. And it helps to orient the attorney in terms of making the trial go smoothly when cross-examining and so forth. I think knowing the area where the offense allegedly occurred gives the attorney something in common with the witnesses. And it's so you come up with a more cogent questioning and trial.
>
> I'm just not comfortable relying on what the police deemed important at that moment. And I think that's the photographs I was given. You know, there are -- there's drawings and there's -- there's some photographs. But you know, I think to adequately represent the defendant and in the exercise of diligence, I should be allowed to look at the area.
>
> There's like three doors that were involved. There's an elevator which may or may not have been used. There's a long hallway where apparently the defendant had either come or gone through. And we don't know what's beyond there. So I think we should be allowed to look at it.

The Circuit Court denied Tetu's motion. The Circuit Court found that "there's no real plausible justification for [the request for access]" and that the request "appears to be speculative and conjecture with a hope to turn up something." The Circuit Court further found that there was already video surveillance of the entry area; that the State had provided discovery (which included the surveillance video, diagrams, and photographs); that more than a year had passed since the charged offense and thus the current "set up may not be helpful"; and Tetu's actions within the utility closets were not relevant except for the missing property, which had been identified.

B.

We conclude that the Circuit Court did not err in denying Tetu's motion to compel discovery. Under Hawai'i Rules

of Penal Procedure (HRPP) Rule 16, the prosecutor is required to provide discovery of materials and information in his or her possession or control and make diligent good faith efforts to cause the disclosure of discoverable evidence in the possession or control of other governmental personnel. HRPP Rule 16(b)(1) and (2). Tetu cites no authority for the proposition that the State can be compelled to provide discovery, in the form of access for inspection, regarding property that is in the possession or control of a private individual or entity, such as the privately-owned Maunaihi Terrace. We conclude that the Circuit Court did not err in denying Tetu's motion to compel the State to provide him access to Maunaihi Terrace.

Courts from other jurisdictions have held that under certain circumstances, a criminal defendant may have a due process right of access to a crime scene in the control of a private party. See People v. Nicholas, 599 N.Y.S.2d. 779, 780-83 (N.Y. Sup. Ct. 1993) State v. Muscari, 807 A.2d 407, 417-18 (Vt. 2002); Bullen v. Superior Court, 251 Cal. Rptr. 32, 33-34 (Cal. Ct. App. 1988). These courts have concluded that in determining whether a private party in control of property should be ordered to provide access to a criminal defendant, the court must balance the defendant's need for access to the crime scene with the private party's right to privacy. Muscari, 807 A.2d at 417. In order to justify the requested access, the defendant must make a prima facie showing of how the proposed inspection would be relevant and material to his or her defense, Nicholas, 599 N.Y.S.2d. at 782, and "demonstrate sufficient 'plausible justification' and 'good cause' for the intrusion." Bullen, 251 Cal. Rptr. at 34. A speculative or conclusory showing, or the failure to explain how the proposed inspection would yield information different from that already disclosed in discovery, is insufficient to overcome the privacy rights of the private party. Nicholas, 599 N.Y.S.2d. at 782-83; Bullen, 251 Cal. Rptr. at 34.

6

Here, in support of his motion to compel, Tetu only made non-specific, speculative, and conclusory claims regarding how access to Maunaihi Terrace was relevant and material to his defense. In essence, Tetu sought access because it would help familiarize his counsel with the scene. However, he did not explain how his proposed inspection would yield information that was different from the materials already disclosed in discovery. Tetu also did not show how his counsel's viewing the scene was material to his defense. Tetu did not dispute that he was the person depicted in the surveillance video or that he had broken into the utility closets. He did not explain to the Circuit Court with any specifics how becoming more familiar with the scene was relevant to his defense.

On appeal, Tetu attempts to provide specifics by asserting that if an inspection of the side door into the building did not reveal signs of a forced entry, it would have shown that someone, such as Sachiko, let him into the building, and that measurements could have explained how Sachiko could have let him in without appearing on the surveillance video. However, Tetu did not make these arguments to the Circuit Court. Accordingly, he cannot rely on these arguments, which were not raised before the Circuit Court, to show that the Circuit Court erred. Based on the arguments Tetu actually made to the Circuit Court, we conclude that the Circuit Court did not err in denying his request to order Maunaihi Terrace to provide access to the crime scene.

II.

We reject Tetu's claim that there was insufficient evidence to support his conviction.[5] Tetu did not dispute that

---

[5] Tetu also contends that the Circuit Court erred in denying his motion for judgment of acquittal made at the close of the State's case in chief. However, it is well established that when a defendant presents evidence after the denial of his or her motion for judgment of acquittal at the close of the government's case in chief, the defendant thereby waives any error in the trial court's denial of the motion. State v. Mitsuda, 86 Hawai'i 37, 38 n.3, 947 P.2d 349, 350 n.3 (1997); State v. Kreps, 4 Haw. App. 72, 75, 661 P.2d
(continued...)

7

his entry was unlawful. Indeed, Tetu conceded in closing argument that "[h]e knows he had no permission to be there, he does not live there, and he's not a guest." However, Tetu contends the evidence was insufficient because "he credibly testified that he lacked any intent to commit a crime against person or property."

When viewed in the light most favorable to the State, the evidence showed that Tetu unlawfully entered Maunaihi Terrace with intent to commit a crime against property rights therein. The evidence showed that neither he nor Sachiko was a resident of or guest at Maunaihi Terrace, and that at 2:00 in the morning, Tetu was roaming the basement, with a flashlight in his mouth, breaking into locked utility closets. Based on this evidence, a reasonable jury could infer that his entry was unlawful. Even assuming *arguendo* that Tetu was licensed, invited, or privileged to enter some portion of the building, there was substantial evidence to support the conclusion that he had no license, invitation, or privilege to enter the locked utility closets. See HRS § 708-800 (2014) ("A license or privilege to enter or remain in a building which is only partly open to the public is not a license or privilege to enter or remain in that part of the building which is not open to the public."); State v. Norfolk, 745 S.W.2d 737, 739 (Mo. Ct. App. 1987).

The evidence that Tetu broke into the locked utility closets; that he left one closet carrying a bag; that batteries and lights stored in the closet were missing; that he wiped the doorknobs to the closets; and that Sachiko denied ever being present at Maunaihi Terrace or asking Tetu to go inside and retrieve her belongings was more that sufficient to show Tetu's intent to commit a crime against property rights. Tetu's attempt to argue that the evidence was insufficient based on his own

---

[5]/ (...continued)
711, 714 (1983). Tetu presented evidence after the State rested its case in chief. Thus, we review Tetu's sufficiency of the evidence claim based on all the evidence presented at trial.

testimony ignores the applicable standard of review, which requires us to view the evidence in the light most favorable to the State.  See State v. Richie, 88 Hawaiʻi 19, 33, 960 P.2d 1227, 1241 (1998).

CONCLUSION

We affirm the Circuit Court's Judgment.

DATED: Honolulu, Hawaiʻi, January 29, 2015.

On the briefs:

Stuart N. Fujioka
for Defendant-Appellant

Donn Fudo
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

*Lawrence M. Reifurth*
Associate Judge

*Tim M. Hing*
Associate Judge